The next case for argument is 20-1514, DePuy Products v. Veterinary Orthopedic Implant. Mr. Schwartz, whenever you're ready. Thank you, Your Honor. I may please the Court. This is Jeff Schwartz at Fox Rothschild for Veterinary Orthopedic Implants, Inc. or VOI. And this case is about whether or not the unredacted amended complaint filed by DePuy should remain sealed or unsealed, and whether the District Court made a clearly erroneous fact-finding that certain trade-secret information was not trade-secret, based on a false legal premise that such information is typically not trade-secret, and then abused its discretion by ordering the unsealing of those trade-secrets. And what happened here is that after the case had been proceeding for about eight months, and significant fact-discovery had occurred, thousands of documents produced, DePuy filed a motion to amend its complaint. And in its amended complaint, it included information such as the confidential relationship that VOI shared with its manufacturer, and also cut-and-pasted documents that it obtained from VOI in discovery, documents that were produced by VOI under the protective order in this case, and that were identified as highly confidential. Mr. Stenchpress, let me just ask you if you're aware of any case in which the identity of a defendant in a civil action for patent infringement was ordered sealed. Your Honor, I'm not aware of a case where the identity of a defendant was ordered unsealed, but I'm also not aware of the opposite, and I'm not aware of a situation where a complaint is amended to insert the other party's confidential information. I didn't understand your answer, but you're also not aware of the opposite? What is the opposite? Well, Your Honor, there are no cases one way or the other. There are no cases ordering the sealing or the unsealing of a defendant's identity, because as far as I know, this circumstance has not occurred before where a plaintiff, using the defendant's confidential information, amends its complaint to add that confidential relationship into the complaint. And that's a relationship that could not have been determined through any publicly accessible information. And in fact, in this situation, we have a party, DePue, who was aware of not only VOI, but was aware of the other defendant and could never put two and two together until they were provided with the confidential information in discovery under a protective order. So there was no ability, even by DePue, who had a desire and a motivation to be able to reverse engineer this information from public sources. Nothing from the Internet, nothing from public shipping documents or invoices or anything else. This amendment was based solely on VOI's confidential documents. Well, I'm not sure that I understand why that's necessarily determinative. Do you agree that if the manufacturer identity was not a trade secret, that there's no basis for sealing? Well, Your Honor, other than the fact that it's also confidential, but if you lump trade secret and confidential together, then I would agree. If DePue could have obtained this information publicly or knew about it through some other means on its own, then it certainly could have sued the manufacturer. Hold on, please. Yes, Your Honor. I'm having difficulty understanding how the manufacturer identity can be a trade secret when there was no obligation on the part of the manufacturer to keep the relationship secret. There was no agreement with the manufacturer to do that. There's no indication of a custom that would achieve that result. So it seems to me you have a situation in which you haven't protected the information by preventing the manufacturer from disclosing it. Well, Your Honor, I would disagree with that for a number of reasons. First off, the law is clear that there's no requirement for a contract, and certainly a confidential relationship can be implied based on the facts and the circumstances, and that's clearly indicated in the Kiwani All-Supreme Court case, the Phillips v. Pryde Fifth Circuit case, and in the Dottolo v. Shelton case. Wait. I'm sorry. I didn't hear that. What facts here suggest that the manufacturer, as a matter of custom or otherwise, was under some obligation not to disclose the relationship? Well, Your Honor, there are several facts that indicate that, the first one being that the products are not marked with the manufacturer's information, nor is the packaging, and I would remind Your Honor that this is not a human product, but rather a veterinarian product. The manufacturer does not include any information on its website to indicate a relationship with VOI or that it makes these products, so it is keeping this information confidential. In addition to that, when VOI communicates with the manufacturer, it identifies that communication as confidential. For example, in the appendix at 2130 to 2131, there's a confidential identifier in its emails to the manufacturer. So the course of performance and the course of dealing between these two parties indicate that both of them keep this information confidential, and quite honestly, part of it is proving the absence of something. In this case, there is no public information that shows that there is a connection between these two parties. And again, DePue was the most motivated to find this connection. DePue was aware of the manufacturer, and that is indicated, for example, in the amended complaint. Where is it on 2130 that this email is more confidential? Actually, Your Honor, it's 2131 where there's a tag that says the email and attachments is confidential, proprietary, and may be subject to copyright and other legal privilege, and et cetera. So that is the identification on a communication between VOI and the manufacturer that they are treating their communications with the manufacturer as confidential. Does the manufacturer label its invoices confidential? Well, the manufacturer does not label its invoices confidential, but they are private communications between the manufacturer and VOI. There is no way to get those invoices other than to get them from the internal files of one party and the other, and there was no way that anyone could do that other than under the protection of the protective order. The protective order is the only reason why DePue was able to get this information and discovery. And certainly, Your Honor, we don't want to create a situation where the public cannot trust protective orders, where litigants cannot trust protective orders. You keep going off on a tangent. The question I have is what is the indication that the manufacturer viewed the relationship as confidential? You said the invoices are not marked confidential. What is the indication that the manufacturer viewed the relationship as confidential? Well, the indication, Your Honor, is that they don't make it public. They treat it as confidential. They don't put it, for example, on their website. They don't tout the fact that they have a relationship with VOI. They don't put on their website the products that they make for VOI. They don't advertise that they have this capability as shown, for example, in these products that it makes for VOI. The evidence is the absence of publicity by the manufacturer. What motive does the manufacturer have to keep the relationship confidential? Well, the motive that the manufacturer has is only in maintaining the good relationship that it currently has with VOI and continuing business or other items. And, of course, the manufacturer is certainly not here to suggest that there's an issue with taking issue with the fact that we're claiming that this is confidential. And I do note that I've run out of time. Well, it just seems to me that the motive that your client has for keeping your relationship confidential is exactly the opposite motive of the manufacturer who would like to do what it is you're afraid of. Well, and interestingly, Your Honor, to that point, they may have a motive to do the opposite, but they don't do the opposite. And so that's clear evidence that they are treating this as confidential. And I would also point out that there's no legal requirement for VOI to have had a contract with the manufacturer, but instead the requirement is only that VOI take reasonable steps to keep its information confidential and VOI's reasonableness in its actions is informed by the fact that the manufacturer has not, in the decades that they've had a relationship, made any of the information related to that relationship public. It hasn't publicized that it does work with VOI. It hasn't publicized that it makes the specific products that VOI acquires from it. There's nothing on any website or any other public source, and the manufacturer certainly could do that for its own motivations, for its own advertising. It chooses to not do that. That's an affirmative act. Well, we haven't talked about evidence in the case that a third party came to your client and certainly suggested that they were aware of the existence of the manufacturer. That's true, Your Honor, and although I'm into my rebuttal time, I'd like to address that. Evidence was relied upon by the district judge, as I understand his opinion. That's true, Your Honor, and I think that the district court erred in their interpretation of that communication, which was one seven-year-old confidential internal email produced in discovery under the protective order, and nowhere in that email does it show that it was derived from publicly available information. So it certainly is not evidence, as the district court suggests, that the information about the relationship with the manufacturer is readily ascertainable. It doesn't indicate how that individual, if they did, ascertained that information. So to point to that confidential internal single seven-year-old email as evidence that the information is public or readily ascertainable is clearly wrong. Before you finish, let me ask you a question about the other information as to which you claim are trade secrets. Your declarations here don't address anything other than the manufacturer identity as being a trade secret. So if I understand it, you didn't supply the district court with any evidence that the other information that you say is a trade secret would, in fact, injure you if it were disclosed, correct? Well, that's not true, Your Honor, to the point that those internal communications, for one thing, disclose the relationship with the manufacturer, which is part of what you're answering my question. Your declarations don't discuss information other than manufacturer identity, correct? That may be correct, Your Honor, that they don't, but the documents themselves were identified as confidential, and that was not an issue that was disputed by DePue, nor is it still disputed. You have to stop. I'm sorry? What documents were labeled confidential that fall into this other category? Well, Your Honor... I don't mean in discovery. I mean before discovery. The emails that are cut and pasted into the amended complaint had the same tagline that we discussed earlier with regard to document 2130 and 2131, and so any one of the emails that are cut and pasted into the amended complaint would have that same indicia of confidentiality. Okay, but no declaration, the disclosure of that information would injure you, correct? That's correct, Your Honor, other than what you've pointed to. Okay. And if there's no other questions, I'd like to reserve the rest of my time for rebuttal, if there is any. Yes, thank you. Let's hear from the other side. Mr. Shinsai, am I mispronouncing your name? Your Honor, it's close enough. Jason Chesby for DePue Synthesis. May it please the court. I want to start out about what the standard is that this court must consider. Can I just start you off? I'm sorry, I started to interrupt, but the time is short. Can I just start you where we ended with your friend and Judge Dyke's question about this other highly confidential information? The district court never discussed that. So why is it not really necessary for us to remand it for him to actually discuss it, whether or not there was sufficient evidence put in as one matter, but in the absence of any discussion, isn't a remand at least likely, if not unnecessary for that matter, for those matters? I don't believe so, Your Honor. The protective order requires that Appendix 0547 for the court has the right to reserve the question of whether something should be sealed. And in fact, in Section 6 of the protective order, it is the burden of the designating party to establish why it was confidential or trade secret information. And so there was no showing made by the defendant that anything other than the identity of the manufacturer was trade secret or that it harmed it, nor was there any analysis. There was no factual showing on that issue. So the court did what the court should have done, which is appropriately focus on the only thing in evidence, that there was a belief that the identity of the manufacturer was a trade secret that should be kept confidential. Let me just ask you why this information isn't in the amended complaint. Couldn't you make your allegations under Rule 8 without including that information in the document? And I think maybe in the record below, the district court also raised that question. Yes, Your Honor. We believe it was appropriate to put that information into the complaint, one, because we didn't believe that it was confidential, and two, we think it actually shows a pattern of behavior between the parties that they are colluding to knock off the Q-Synthesis products. And so whether you paste the email or you actually describe the allegation, it's the same issue. We wanted to allege, and if you look at these emails, this is clear. If you look at, for example, Appendix 2130, that these parties are colluding to knock off our products, and we did feel that was appropriate to plead in the complaint. I should also note that there was a remedy available to the defendants in this matter if they thought that was somehow inappropriately present in the complaint. It was a Rule 12-F motion to strike salacious material. There was no Rule 12-F motion filed. To the contrary, they conceded that this was an appropriate complaint and allowed it to be filed without dispute in front of the district court. Have I answered your question, Your Honor? Yes, except one point to the point you were making earlier. They preserved this issue, as I understand it, in blue, and I don't see any mention of it by you all in red. Am I missing something? The reason for that, Your Honor, is because we want to strip this down to its actual limited issue, which is that the idea that they can hide the identity of a serial copier of our products who doesn't have enough respect for the judicial system to even show up is so wrong. Yes, but I'm talking about just they raised this right. I do disagree. They raised this and they preserved this argument about the other highly confidential information in blue and that you failed to address it in any way, shape, or form in red. We did address it in the sense that we pointed out that we did not take a position on this in front of the district court in the briefing below because we were solely focused on getting the case going. No, wait, wait. Your brief doesn't say that. Your brief simply says you do not take a position. It doesn't say you didn't take a position. So footnote 4 in your red brief at page 21 says, simply, does not take a position regarding issue 3. That's correct, Your Honor. Which typically means that you surrendered. That's correct, Your Honor. In other words, we don't take a position either way whether the district court's decision was correct or incorrect as to the other information because it's not relevant to us in terms of the progress of the case. But I thought you were saying a few minutes ago that it is important for you to make allegations of collusion and copying. So I'm not sure that I understand exactly what you're saying. Are you saying that the e-mails don't have to be included, but you have to say the same thing in terms of an allegation? Is that the idea? What we said below is that we believed that we were not opposed to the sealing of the e-mail communications. We were opposed to the concept that the manufacturing relationship could be hidden, and that was what our goal was as part of the process of moving the case forward. Sir, on page 49 of your red brief, you say that a clearly apparent and less onerous alternative would be a redacted version that redacts only the stuff, not the name. Yes, Your Honor. That's correct, and that was the position that we effectively took in front of the district court below, and it's the position that we're taking now, which is the purpose of this was not to be punitive towards... So you would not object to redacting the other highly confidential information? The other information that is purported to be highly confidential, but on which they didn't carry the burden, yes, Your Honor. I'm trying to draw a distinction between the name of the manufacturer and the so-called relationship on the one hand, and then the so-called other highly confidential information, which is all the rest of the stuff. And so what I understood your brief to be saying, whether it was from your footnote or from page 49, was that you would not disagree with redacting the other highly information. So long as the name or the relationship was not redacted? That's correct, Your Honor, and I want to be clear about something, which is that complaints are an apex public interest, and so although my client doesn't take a position on the redaction of the emails themselves, I do believe that it's appropriate for me to speak on behalf of Judge Schlesinger and the Middle District of Florida, which the Eleventh Circuit has said the complaints are apex public interest. This is not a situation in which there was an allegation that we put anything scandalous or scurrilous or unnecessary in the complaint. We know that because there was no Rule 12-F motion. And so on behalf of Judge Schlesinger and on behalf of the Eleventh Circuit, they are proctors of their own court, right? It's not my place to tell Judge Schlesinger how he should run his case. And the idea that he made a perfectly reasonable decision that's subject to abuse of discretion, that in his court he doesn't want complaints sealed, is absolutely within his discretion. The Eleventh Circuit has made clear that in that decision they want extremely limited and highly deferential review of the district court. And in these statements that counsel is making, he's pointing to automatic email footers that are put on emails and saying that shows this confidentiality. The Alexander decision, the Phillips decision that they quote says you can't unilaterally create confidential information. Let me give you another example. If you go to Appendix 2139 through 2140, this is a situation in which they also have that random automatic footer when they're sending an email to Norm Jorgensen who they've admitted under oath they have no confidential relationship with whatsoever, no agreement with, no business relationship with, and he says DOI manufactures the product. This fiction that they're presenting that any of this information is confidential, it's quite clear that Judge Schlesinger just didn't buy it. He didn't find it supported by the facts. It's contradicted by a wealth of evidence. Let me give you another example. If you go to Appendix 2123, this is the manufacturer's website, counsel says that they don't even advertise the capability of making the products at issue. If you go to Appendix 2123, they advertise making orthopedic plates. They advertise making stainless steel plates. They advertise making Swiss stainless steel plates. Swiss stainless steel plates, and if you go to Appendix 2130, that's exactly what DOI is ordering from the manufacturer. And so what I want to separate out is I have a duty to my client. The duty of my client is to ensure that this bizarre situation in which it's defended in serial defaulter  Separate from that, I think I have an obligation to Judge Schlesinger to explain that in the 11th Circuit, there's a very, very strict standard for suing complaints, and he was absolutely within his rights and appropriate to not sue any of this because there was no factual showing that anything other than the name of the complaint caused any harm whatsoever to the defendant. Now, it is a fair point that someone should not just be putting things in the complaint to embarrass individuals. It's a fair point. Congress and the federal courts have recognized that, and it's called Rule 12-F. And there is not one allegation by defendants that this has been a violation of Rule 12-F. They didn't say it was a violation below, and they didn't say it in any paper before this court. But the district court... Excuse me. I'm sorry. I've had a lot of cases this week, but I don't have any recollection of the district court judge giving us any analysis with respect to the other highly confidential information. So we all want to defend his prerogative to do what he needs to do as a district court judge, but we need to have some basis for evaluating that decision, right? The... I'm sorry. I'm so sorry, Your Honor. There's a propagation delay. I did not mean to be disrespectful and cut you off. No. Answer. I think you have my question. You broke up. That was the problem. Oh, I'm very sorry. I guess I don't see anything where the district court... Even if we wanted to defer to the district court on the matter of the other highly confidential information, I'm not seeing any analysis upon which we could defer. So don't we at least need something? So, Your Honor, I believe there is a reference on Appendix 001. It says, Beogai contends that certain information the accused proposes to include in the amended complaint, including the identity of the manufacturer of the accused products, the business relationship of the manufacturer and DOI, and information that could be used by the identity of the manufacturer is highly confidential that should not be made public. So I believe there's a general reference in the order to the category of information that they're seeking to seal. This creation of the quote other confidential information, if there's no factual showing by DOI that that information was harmful to them, they failed under the Romero standard. And the court said under the Romero standard, separate from whether it was confidential, that he believed nothing in this order, nothing in the complaint, rose to the level of a Romero standard that would prevent the complaint from being made public. And so if you're answering the question, does the court have to literally list every single email and say yes, no, maybe so, I don't believe that that's a fair standard for a district court. I think that the chief judge's opinion in Apple is also informative, which is in Apple, we were talking about individual documents that were not part of the complaint, were not ultimately exhibits used as trial, they were just attachments. And in that situation, the court, I think, appropriately went through each of these documents and said yes or no on confidential, because there was a factual underlying showing, or yes or no at the ceiling, because there was a factual underlying showing that there was a harm associated with that. It is the defendant's burden to show that there was a harm on this other confidential information. They remained utterly silent on it in their papers. And the fact that this court, that the district court has to separately deal with a harm that was not even identified in other confidential information, I don't believe that's appropriate under the standard of review in the 11th Circuit, which talks about complaints being Apex public interest. If they wanted to overcome the Apex public interest standard, it was their burden to put in evidence separate from the identity being confidential, and they failed to do it. May I proceed, Your Honor? Yes, thank you. We heard about this email exchange, Appendix 2138, and this is actually, to me, a fascinating aspect of what is inappropriate about this briefing. The standard is clear air. It's quite clear that my brother has a different interpretation of Appendix 2138 than Judge Flesinger did. Appendix 2138 is an email exchange from a third party who their executive admits has no relationship with them, and in that document they said, we heard that VOI uses the manufacturer. That email is not confidential. It's not flag confidential. It doesn't say confidential whatsoever. There's a forwarding of that email to the CEO of this company, and the CEO of this company rehearses the response in which they acknowledge the identity of the manufacturer and say they use other manufacturers as well. The idea that it is appropriate under the Eleventh Circuit standard for an appellate court of panel to reweigh the interpretation of that email, I think… Well, let me just ask you quickly. Your other friend's argument, if I understand it correctly, your friend's argument seemed to be that what we look at is the absence of an affirmative way to show they intended to make it public rather than what I think the district court relied on was there was no indication that they were going to keep it confidential. If you understand my question, do you want to respond? I do. So that is not the law in the Eleventh Circuit. The law in the Eleventh Circuit is that you must establish that it was not known that it had an economic value and that reasonable efforts were kept. And so the fact, the actual relevant question under the Florida standard for trade secretaries, was it known, yes or no? Not did people take steps or was it affirmative? It's was it known? And so Appendix 2138 is highly relevant to that first question, which is was it known? Just like Appendix 2123 is highly relevant to the question of was it known because the manufacturer advertising that it makes literally the exact style of plates at issue here, Swiss plates. And so I disagree with the standard that my brother presented to the court. The standard is an objective inquiry of whether it was known or not, not did people take affirmative steps to try to keep it from being known or did people take negative steps to not care about whether it was known. That's a separate prong of the trade secret analysis under Florida law. Okay, thank you. I think you can finish your sentence. I'm sorry, I didn't mean to cut you off, Ms. Dunton. Your Honor, I was just thanking your honors for your patience today and we urge denial of the appeal. Okay, thank you. Mr. Schwartz, I'm not sure how much time you have left. Perhaps Ms. Bayless can tell us. Twenty seconds. Okay, we'll certainly restore three minutes of rebuttal to Mr. Schwartz. Thank you. Thank you, Your Honor. And I'm going to try to very quickly just comment on some of the stuff that my colleague has mentioned from back to front. He just commented about the standard being known or not known. The standard is whether something is publicly known or reasonably ascertainable, and there's nothing in that email to indicate that it was publicly known or reasonably ascertainable. It's a confidential single email from seven years ago. And further, Mr. Sheesby inaccurately said that there was an acknowledgement back to the third party, which is simply nowhere in that email. There's nothing saying tell the third party that this is correct or incorrect. Rather, they were talking about the partnership between the people. And this is not just some random email that was received by the company. This is part of an ongoing dialogue. The title of the email is follow-up. It's not just someone sending you an email saying, hey, I heard this. And certainly part of the problem here is that there's a potential for mischief between parties when someone discloses something under a protective order and that party is then free to put that information into a complaint and by doing that make it public. It's an end run around the protective order. And so certainly the pew could have made allegations without cutting and pasting confidential information into the complaint. And it was absolutely a confidential communication between that third party and VOI as indicated by that email and the fact that that is not a public document. That's a confidential internal document. And I would like to address the internal website comment that Mr. Sheesby made because it is absolutely false that it discusses Swiss plates. It talks about CNC Swiss manufacturing, which has nothing to do with a VOI product. And there's nothing on that website that talks about VOI's products. It generically talks about orthopedic plates, which are tens of thousands, if not more, plates out there in the world, and stainless steel plates even more than that. None of that can connect the manufacturer to VOI. And I would also add that this comment about Swiss plates was not even in DePuy's brief. And I would only go back to Judge Dyke's question to mention that in the record at 2057, during our notice back and forth with the court is our discussion of the other documents that had been cut and pasted into the complaint. And I heard the bell, so unless there's another question, I'll leave it at that. Okay, thank you. We thank both sides in the cases submitted. That concludes our proceeding for this morning. Thank you, Your Honor. Thank you, Your Honor. The honorable court is adjourned until tomorrow morning at 10 a.m.